# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 22, 2007

Charles R. Fulbruge III
Clerk

No. 06-50794

TONIYA PARKER; RUSSELL KAUITZSCH; TINA LIVINGSTON,

Plaintiffs-Appellants,

v.

THELMA DUFFEY; JOHN J. BECK; MICHAEL BOONE; CHRISTOPHER BROWN; STAN CARPENTER; COLLEEN CONNOLLY; LINDA HOMEYER; STELLA KERL; JOLYNNE REYNOLDS; ERIC SCHMIDT; TEXAS STATE UNIVERSITY; VINCENT MORTON,

Defendants-Appellees.

Appeal from the United States District Court
for the Western District of Texas
1:04-CV-315

Before GARWOOD, JOLLY, and STEWART, Circuit Judges.

PER CURIAM:[*]

Plaintiffs-Appellants appeal the district court's grant of summary judgment in favor of Defendants-Appellees. Finding no error, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

During the 2002-03 academic year, Plaintiffs-Appellants Toniya Parker, Russell Kauitzsch, and Tina Livingston were graduate students enrolled in the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Professional Counseling, Marriage, and Family Therapy Program at Texas State University ("University").[1]  They also served as officers for two university-affiliated organizations, the Counseling Association of Southwest Texas ("CAST") and an honor society, Chi Sigma Iota ("CSI").  Defendant-Appellee Thelma Duffey served as the faculty advisor to both organizations.  In order for funds from the bank accounts of those two organizations to be accessed, one of the officers and Duffey had to approve and sign a "Request for Club Account Payout" form.

In March 2003, Parker, Kauitzsch, and Livingston approached Duffey about attending a conference in California hosted by the American Counseling Association.  Although Duffey told them they could attend, she informed them that the CAST chapter at the University could not fund the trip.  The students informed Duffey that they had acquired private funding for the trip, but since that money would not be collected until after the conference, they requested a $1,500 advance from the CAST account to temporarily cover their expenses.  Duffey signed the form authorizing their use of the CAST funds.

In July 2003, Duffey, while reviewing the CAST and CSI bank accounts, discovered that additional payout forms had been submitted, even though none of the students had presented her with any "Request for Club Account Payout" forms to sign.  She requested that Dr. Michael Boone, then Acting Chair of the Educational Administration Psychology Services Department, meet with the three students and discuss her suspicions that they had forged her signature and stolen money from the CAST and CSI accounts.  Boone and Duffey met with Parker and Kauitzsch twice during the month of July; Livingston did not attend either meeting as she had already graduated and could not take time off work.  During these meetings, Duffey accused the students of mishandling the CAST

---

[1] Livingston graduated from the program during the Spring of 2003.

and CSI funds. The students, in response, presented receipts for all expenditures and argued that Duffey had allowed them to withdraw expenses from the account even when she had not personally signed the forms. Duffey denied those assertions.

Parker and Kauitzsch then met with Dean Vincent Morton, the Coordinator of Student Justice, which was the forum responsible for addressing university-wide violations of student conduct and adjudicating disciplinary actions. Since Livingston was no longer enrolled, Student Justice commenced no actions against her. At their initial meeting, Parker and Kauitzcsh orally requested that Morton provide them with a copy of their files and all information pertinent to his investigation. They allege that they never received these materials until after the instigation of litigation. Morton met with Parker and Kauitzcsh twice, and after reviewing all the materials submitted both by the students and the University, he concluded that they had violated the University Code of Student Conduct. On August 27, 2003, both Parker and Kauitzsch signed a form agreeing to waive a disciplinary hearing and accept a penalty of one year of disciplinary probation and restitution of $1,936 to the CAST bank account. The students claim that Dean Morton assured them that signing the disciplinary form would appease the faculty.

However, soon thereafter, Dr. Stella Kerl, an associate professor in the students' department, scheduled a meeting between each student and a Faculty Review Committee ("FRC") to determine whether the students satisfied the requisite ethical standards needed to continue in the counseling graduate program. Parker and Kauitzsch each met with a FRC on September 8, 2003. After the meetings, both FRCs concluded that Parker and Kauitzsch should be suspended from the program for two-years (with the possibility of review after one year) and attend forty-five hours of ethical counseling. The students appealed these decisions to the chair of the department, Dr. Stan Carpenter,

contending that they were entitled to a full academic hearing. They also argued that the two-year suspension essentially amounted to expulsion since their program required that they graduate within five years of the date of their matriculation into the program. Carpenter upheld the FRCs' recommendations.

All three students filed suit against the above named Defendants-Appellees in federal district court, alleging violations of due process and equal protection under both the Texas and federal constitutions, as well as violations of the federal Family Educational Rights and Privacy Act ("FERPA"), and the Texas Public Information Act ("TPIA"); they sought damages and injunctive relief under 42 U.S.C. § 1983.[2] The district court: (1) dismissed the claims against the University and Beck in his official capacity, finding they were barred by the Eleventh Amendment; (2) dismissed Livingston's due process claims; (3) granted Defendants' motion for summary judgment on Parker's and Kauitzsch's due process claims; (4) dismissed the students' equal protection and first amendment retaliation claims; and (5) dismissed their FERPA and TPIA claims as moot. The three students timely appealed the district court's dismissal of their procedural due process claims, as well as the dismissal of their FERPA and TPIA claims as moot.

## II. DISCUSSION

We review the district court's grant of summary judgment de novo. Templet v. Hydro-Chem, Inc., 367 F.3d 473, 477 (5th Cir. 2004). "Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." Id. Evidence is viewed in a light most favorable to the non-movant. Id.

The Fourteenth Amendment prevents states from depriving any person of life, liberty, or property without due process of law. U.S. CONST. amend XIV, §

---

[2] The students also brought a First Amendment Retaliation claim against the Defendants. That claim, which was also dismissed by the district court, was not appealed.

1.   The Supreme Court has recognized that students at tax-supported educational institutions subjected to remedial actions resulting in removal from the academic setting are entitled to the protections of the Due Process Clause. Goss v. Lopez, 419 U.S. 565, 576 n.8 (1975).  While "the very nature of due process negates any concept of inflexible procedures universally applicable," Id. at 578 (quoting Cafeteria Workers v. McElroy, 367 U.S. 886, 895 (1961)), at a very minimum, students are entitled to notice and an opportunity to be heard. Id. at 579.

The students assert that the district court erred in granting the Defendant's motion for summary judgment on their due process claims.[3]  They contend that the district court erred in determining that they knowingly waived a hearing on the disciplinary decision and that the academic suspension that followed was not the result of that disciplinary action.  They direct this court's attention to Dixon v. Ala. State Bd. of Educ., 294 F.2d 150, 158-59 (5th Cir.), cert. denied, 368 U.S. 930 (1961), where this court not only held that students at public universities are entitled to procedural due process protections, but also that the amount of process due is dependant on whether the action is disciplinary or academic.[4]  See Wheeler v. Miller, 168 F.3d 241, 248 (1999).  The students argue that the University "bootstrapped" its disciplinary decision onto its academic decision, and as such, they were entitled to greater due process protections.

---

[3] Plaintiffs bring their claims under the Texas and federal constitutions.  However, because "Texas courts [in cases involving academic decisions] interpreting the Due Course Clause of the Texas Constitution have looked to federal case law interpreting federal due process rights," Wheeler v. Miller, 168 F.3d 241, 247 (1999) (internal citations omitted), we need not analyze their claims under both state and federal case law.

[4] In Bd. of Curators of Univ. of Mo. v. Horowitz, 435 U.S. 78, 86-90 (1978), the Supreme Court, relying in part on Dixon, explained that students are entitled to far fewer procedural protections in academic actions.  While a hearing may typically be appropriate for disciplinary actions schools take against their students, the Court observed that such a process may be less useful in determining the truth concerning scholarship or other academic endeavors.  Id.

We reject the arguments advanced by the students. First, the district court properly dismissed Livingston's due process claim. It is uncontested that Livingston graduated from the University in the Spring of 2003, before Duffey raised her allegations against the students. Livingston was not a part of any of the meetings that occurred during the Summer of 2003, and she has failed to demonstrate that she was deprived of any constitutionally-protected interest.[5] Livingston asserts that her reputation was damaged by the University's actions, but case law has established that there is "no support for the proposition that reputation alone, apart from some more tangible interests . . . is either 'liberty' or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause." Wheeler, 168 F.3d at 249 (quoting Paul v. Davis, 424 U.S. 693, 701 (1976)).

Second, Parker and Kauitzsch have failed to demonstrate that they were entitled to any more due process than they have already received. They were given notice of the allegations against them. They then had ample opportunity to be heard: they had two meetings with Boone and Duffey, two meetings with Morton, and they each met with a FRC. While none of these meetings were formal, trial-type hearings, both Parker and Kauitzsch were able to fully discuss the charges against them and present evidence supporting their contentions. That is all the Due Process Clause requires in this situation. The district court, after a thorough review of the evidence, found that the students "were afforded the due process to which they were entitled." After independently reviewing the record, we refuse to disturb that determination. In reaching this conclusion, we

---

[5] Livingston, for the first time in her reply brief, states that even though the University had already conferred her degree at the time the allegations against her arose, she was still attending class in order to finish an incomplete grade. She contends that the University converted her incomplete into an "F," and that she is entitled to due process on that ground. However, this court does not consider arguments not raised in an appellant's original brief. See Nissho-Iwai Co. v. Occidental Crude Sales, Inc., 729 F.2d 1530, 1539 n.14 (5th Cir. 1984) ("[A]n [appellant's] original brief abandons all points not mentioned therein.").

need not decide whether the action the University took against the students was disciplinary or academic in nature because the students received sufficient process under either standard.

We also find that the district court properly dismissed the students' FERPA and TPIA claims as moot because the University provided them with the records they requested.

## III. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.